BRETT L. TOLMAN, United States Attorney (#8821)
AMY J. OLIVER, Assistant United States Attorney (#8785)
Attorneys for Plaintiff
185 South State Street, # 300
Salt Lake City, Utah 84111-1506
Telephone: (801) 524-5682
amy.oliver@usdoj.gov

Greg Jacob, Solicitor of Labor
Michael A. Stabler, Regional Solicitor
John Rainwater, Associate Regional Solicitor
  and Special Assistant United States Attorney
Lydia Tzagoloff, Trial Attorney and
  Special Assistant United States Attorney
1999 Broadway, Suite 1600
Denver, CO  80202
Telephone: (303) 844-1745
tzagoloff.lydia@dol.gov

_____

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) | Case No.  2:09cv00026 JTG |
| Plaintiff | ) ) | |
| v. | ) ) ) ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING A DATE FOR HEARING |
| FOOPTUBE, LLC, D/B/A SENSORY SWEEP, AND DAVE RUSHTON, INDIVIDUALLY, | ) ) ) ) | ON PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION |
| Defendant. | ) ) ) | Honorable J. Thomas Greene |

_____

Plaintiff, Elaine L. Chao, Secretary of Labor, United States Department of Labor, respectfully submits the memorandum in support of its motion for a temporary restraining order.

FACTS

This action is brought under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) hereinafter referred to as the Act or the FLSA, which authorizes injunctive relief under Section 17 (29 U.S.C. §  217).  This proceeding is a result of Defendants' Fooptube, LLC, d/b/a Sensory Sweep's and Dave Rushton's failure to pay their employees the minimum wage and overtime compensation due them.  Defendants Fooptube, LLC, d/b/a Sensory Sweep (Fooptube) and its President, Dave Rushton, are engaged in the manufacture or production of software, video games, and video game components (such as data files) for the purpose of selling the same in interstate commerce.

Plaintiff first learned of the Defendants' violations on October 28, 2008, when she received a complaint from one of Defendants' employees.  Plaintiff's investigator, Tonya Labish, is currently conducting an investigation of Defendants Fooptube and Dave Rushton and has obtained information from Defendants and their employees that some or all of Fooptube's and Dave Rushton's employees have not been paid for the period of time from October 1, 2008, to the present time.  Plaintiff estimates that approximately 198 employees of Fooptube and Dave Rushton are due approximately $ 2,018,437.30 for this period to time.

Plaintiff believes that assets and inventory produced, manufactured or worked on in violation of the FLSA are about to be sold to buyers outside the state of Utah and shipped in interstate commerce.  Because Defendants' employees have not been paid for working on these

2

goods, such goods have been manufactured in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act.

ARGUMENT

The purpose served by the Act would be defeated by allowing "tainted" goods to enter into the channels of interstate commerce, and hence shipment of these goods should be enjoined promptly.

Section 15(a)(1) of the Act prohibits the shipment, delivery, or sale, in interstate commerce, of goods that have been produced in violation of the Act's minimum wage and overtime provisions.  (29 U.S.C. §  215(a)(1)).  The proscription applies to any "person," with a limited exception not pertinent to this case.  Section 3(a) of the Act defines "person" broadly to include any "individual, partnership, association, corporation, business trust, legal representative, or any organized groups or persons."[1]  See Citicorp Industrial Credit, Inc. v. Brock, 483 U.S. 27, 33-34 (1987), aff'g Brock v. Ely Group, Inc., 788 F. 2d 1200 (6th Cir. 1986).

In United States v. Darby, 312 U.S. 100 (1941), the Supreme Court considered the purposes generally served by the Act and, within that context, the specific purposes served by Section 15(a)(1)'s prohibition against the entry of "hot goods" into commerce:

> [The Act's] purpose . . . is to exclude from interstate commerce goods produced for the commerce and to prevent their production for interstate commerce, under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being; and to prevent the use of interstate commerce as the means of competition in the distribution of goods so produced,

---

[1] The Act's prohibition against the shipment or sale of "hot goods" is enjoined through Section 17 of the Act which confers jurisdiction upon federal district courts "to restrain violations of Section 15." See Donovan v. Rockford Textile Mills, 608 F.Supp. 215, 216-217 (E.D. Tenn. 1985).

3

and as the means of spreading and perpetuating such substandard labor conditions among the workers of the several states.

312 U.S. at 109, 110.  The Court continued:

The motive and purpose of the [prohibition against the sale or shipment of "hot goods" are] plainly to make effective the Congressional conception of public policy that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce and to the state to which the commerce flows.

312 U.S. at 115.  The Supreme Court has reaffirmed its reading of the Act and the purposes served by Section 15(a)(1) in Citicorp Industrial Credit Inc., supra, 483 U.S. at 36-37.

In Citicorp, an employer and its secured creditors were enjoined from shipping or selling "hot goods" that had been produced by employees, who, like the Defendants' employees in the case at bar, were not paid wages in accordance with the Act's requirements.  In this context, the Court reiterated statements it had made in Darby, supra, observing that application of the Act's "hot goods" proscription in such circumstances particularly well serves the Act's dual goals:  to discourage the production of goods in violation of its minimum wage standards and to prevent goods so produced from entering into the channels of interstate commerce.  483 U.S at 36-37. The Court flatly rejected arguments that the prohibition contained in Section 15(a)(1) was somehow peripheral to the main purposes of the Act, instead ruling that "exclusion from interstate commerce of goods produced under substandard conditions is not simply a means to enforce other statutory goals; it is itself a central purpose of the FLSA." 483 U.S. at 36-37 n.8. [2]

---

[2]  In so concluding, the court relied in part upon President Roosevelt's message to Congress which inspired passage of the Act: "Goods produced under conditions which do not meet rudimentary standards of decency should be regarded as contraband and ought not be allowed to pollute the channel of interstate

The injunctive relief sought by the Secretary of Labor is a vital tool in the effectuation of the policy laid down by Congress for the protection of the public interest. The violations of the minimum wage and overtime provisions of the Act by Defendants, coupled with the delivery, shipment or sale into commerce by Defendant of goods produced by employees not paid in conformity with the minimum wage and overtime provisions of the Act, will cause irreparable injury and loss to Plaintiff, Defendants' employees and the public. As set forth earlier, Section 15(a)(1) of the Act prohibits the shipment into commerce of goods produced under subminimum standards, and thereby "furthers the goal of eliminating the competitive advantage enjoyed by goods produced under substandard conditions." 483 U.S. at 40.

Payment of less than the wage standard contained in the Act affects the general well-being of workers and constitutes an unfair method of competition. Defendants, by delivering, shipping or selling into commerce goods which were produced by workers not paid in accordance with the Act, are unfairly competing with their law-abiding competitors who must charge their customers more for similar goods and services in order to pay employees in accordance with the Act. A temporary restraining order followed by a preliminary injunction is needed to stop Defendant from pursing this unfair method of competition.

Moreover, the need for a temporary restraining order and a preliminary injunction is particularly acute in a case such as the instant one, in which it is believed that Defendants are about to ship into commerce goods (i.e., electronic transmission of data files comprising video

---

trade." H.R. Doc. No. 255, 75th Cong., 1st Sess., 3 (1937). 107 S.Ct. at 2700, n.8. See Powell v. United States Cartridge Co., 339 U.S. 497, 516 (1950).

5

game components) produced by said underpaid workers.  If a temporary restraining order and preliminary injunction are not issued before said goods are shipped into interstate commerce, it may be virtually impossible for Plaintiff to obtain the back wages which rightfully belong to the Defendants' employees.  Moreover, law-abiding competitors will be irreparably harmed by the shipment into commerce of goods produced in violation of the Act.

In addition, it is well settled that to justify the granting of a "statutory injunction" under express statutory authority such as in the instant case, as opposed to one granted pursuant to Rule 65 of the Federal Rules of Civil Procedure, the otherwise traditional showing of irreparable injury is not required to be made when the injunction is sought by the governmental agency charged with the enforcement of the statute.  Environmental Defense Fund, Inc. v. Lamphier, 714 F.2d 331, 338 (4th Cir. 1983).  In deciding whether to grant a temporary restraining order or a preliminary injunction, the critical question before the Court is whether there is a reasonable expectation that Defendants will thwart the policies of Congress as expressed in the relevant Act by engaging in activities proscribed therein.  Securities & Exchange Commission v. Globus International Ltd., 320 F.Supp. 158, 160 (S.D. N.Y. 1970).

The enactment into law of the statutory authority has been held to be an expression of a national public policy, and the threatened violation of the law itself has been held to constitute sufficient public injury to warrant the granting of a temporary restraining order or preliminary injunction to the government applicant.  United States v. Nutrition Service, Inc., 227 F.Supp. 375, 388, 389 (W.D. Pa. 1964), affirmed, 347 F.2d 233 (3rd Cir. 1965); United States v. Ingersoll-Rand Company, 218 F.Supp. 530, 544-545 (W.D. Pa. 1963), affirmed, 320 F.2d 509

(3rd Cir. 1963), overruled on other grounds in U.S. v. FMC Corp., 84 S.Ct 4, 7 (1963).

It appears from the Affidavit of Wage-Hour Investigator Tonya Labish that Defendants have failed to pay covered employees in accordance with the minimum wage and overtime provisions of the Act, and that Defendants are offering for transportation, shipping, or delivery, electronically, or otherwise, goods produced by employees not paid in accordance with Sections 6 and 7 of the Act.  These violations are causing irreparable harm to the employees in question, Plaintiff and the public.  As it is believed that Defendants are about to ship into commerce goods produced by said underpaid employees, a temporary restraining order followed by a preliminary injunction must be issued to stop Defendants from shipping the goods and from continuing to violate the Act.

By allowing an injunction against Defendants sale or shipment of the "hot goods" until the removal of the "taint" (i.e. the use of underpaid labor to produce the goods in violation of the Act), the Court would effectuate the purposes served by the Act and its "hot goods" provision: the responsibility to enjoin tainted goods from entering interstate commerce.

## CONCLUSION

The violations of the Act here are causing irreparable harm to the employees in question, Plaintiff and the public. As it is believed that Defendants are about to ship into commerce goods produced by said underpaid employees, a temporary restraining order followed by a preliminary injunction must be issued to stop Defendants from shipping the goods and from continuing to violate the Act.

For the reasons stated herein, the Secretary respectfully requests that a temporary

restraining order be immediately issued, followed by a preliminary injunction, after further notice

and hearing.

DATED this 14th day of January, 2009.

Gregory F. Jacob, Solicitor of Labor
Michael A. Stabler, Regional Solicitor
John Rainwater, Associate Regional Solicitor and
    Special Assistant United States Attorney
Lydia Tzagoloff, Trial Attorney and Special
    Assistant United States Attorney
United States Department of Labor

Attorneys for Plaintiff


BRETT L. TOLMAN
United States Attorney

/s/ Amy J. Oliver
_____

AMY J. OLIVER
Assistant United States Attorney

Associated Local Counsel for Plaintiff